UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. CR-24-450-R |
| | ) |
| ANTWON MONTRELL JACKSON, | ) |
| SARAH LARAYNA HOLLAND, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Defendant Jackson entered a plea of guilty to one count of conspiracy to sex traffic a minor and was sentenced to a 156-month term of imprisonment. Defendant Holland also entered a plea of guilty to one count of conspiracy to sex traffic a minor and was sentenced to a 30-month term of imprisonment. At the sentencing hearing for each respective defendant, the Court indicated that the determination as to the amount of restitution would be deferred.

Now before the Court is the United States' Request for Restitution [Doc. No. 232] seeking a restitution award in the amount of $183,006.00. The Court held a hearing on January 9, 2026 which included testimony from the Government's only witness – the victim's mother – and exhibits submitted by the Government. Following the hearing, the parties submitted proposed findings of fact and conclusions of law [Doc. Nos. 242, 246, 247]. In its post-hearing brief, the government seeks restitution in the amount to $56,863.84. Defendants contend that the government has not met its burden of establishing the victim's losses or amount of losses by a preponderance of the evidence.

1

The government seeks restitution pursuant to 18 U.S.C. § 1593 which requires restitution to victims of sex trafficking for "the full amount of the victim's losses." 18 U.S.C. § 1593(b)(1). The "full amount of the victim's losses" is defined to include the "value to the defendant of the victim's services" as well as "any costs incurred, or that are reasonably projected to be incurred in the future, by the victim, as a proximate result of the offenses involving the victim." *Id.* §§ 1593(b)(3); 2259(c)(2).

Importantly, "[a] district court may order restitution 'only for losses actually resulting from the offense of conviction.'" *United States v. Anthony*, 22 F.4th 943, 950 (10th Cir. 2022) (*Anthony II*) (quoting *United States v. Anthony,* 942 F.3d 955, 969 (10th Cir. 2019) (*Anthony I*)). This requires the government to prove that "a defendant's actions are the but-for and proximate cause of a victim's injuries." *United States v. Coulter*, 133 F.4th 1083, 1085 (10th Cir. 2025). Under the but-for causation standard, the government "must show that, but for the defendant's conduct, the victim would not have suffered those losses." *Anthony II*, 22 F.4th at 950. Meeting this burden may require the government to "disaggregate and differentiate the harms caused by a defendant from the harms not caused by the defendant." *Coulter*, 133 F.4th at 1090. This type of inquiry is most appropriate when "the victim's asserted losses overlap with similar harms that occurred before the events at issue" and does not preclude restitution merely because a victim has experienced prior traumatic events. *Id.* at 1090-91.

The victim's "losses, and the amount of such losses," must be proven by a preponderance of the evidence. *Id.* Although a district court "need not calculate the harms with exact precision," neither can it "simply rubber stamp a victim's claim of loss because

2

it is difficult to distinguish past and present harms." *Anthony I*, 942 F.3d at 969-970 (quotation marks omitted). "In determining the amount of loss, a sentencing court may resolve restitution uncertainties with a view towards achieving fairness to the victim, so long as it still makes a reasonable determination of appropriate restitution rooted in a calculation of actual loss." *United States v. Howard*, 887 F.3d 1072, 1076 (10th Cir. 2018) (quotation marks omitted). "Speculation and rough justice are not permitted." *United States v. Ferdman,* 779 F.3d 1129, 1133 (10th Cir. 2015) (quotation marks omitted).

In this case, the government's revised request seeks restitution totaling $56,863.84 to account for the following categories of expenses:

| | |
|---|---|
| Emergency room visit | $1,018.00 |
| Past individual therapy/psychiatric services | $13,242.40 |
| Future individual therapy | $7,500 per year for three years |
| Future psychiatric services | $300 per year for three years |
| Past medication | $4,493.36 |
| Future medication | $4,493.36 per year for three years |
| Value to defendant of victim's services | $1,230 |

To meet its burden of proving these losses by a preponderance of the evidence, the government relied on testimony from Jane Doe's mother, a letter from Jane Doe's Guardian Ad Litem, documentation reflecting some dates and costs for past treatment, and CashApp records for the sex trafficking transactions. The government did not present any expert testimony or evidence from Jane Doe's providers describing Jane Doe's diagnosis, outlining her past or future treatment needs, or explaining how the treatment is causally connected to being sex-trafficked by Defendants.

3

Jane Doe's mother testified that Jane Doe's behavior changed after she was sex trafficked by Defendants and that while she used to be an outgoing, defiant teenager, she is now afraid to go out in public and has nightmares. She further testified that Jane Doe experienced PTSD, she went to a hospital emergency room and was admitted for in-patient treatment when Defendant Jackson was arrested, she received therapeutic and medical management services from Counseling and Recovery Services after being discharged from this inpatient treatment, and she took medications. She believes that Jane Doe benefited from these services and should continue individual counseling and medication for at least a year, but admitted that she was not sure how long she needed the services. She also acknowledged that Jane Doe has experienced serious mental health issues in the past, including three prior hospitalizations and a suicide attempt.

After considering the evidence and testimony presented at the restitution hearing and the record as a whole, the Court finds that, with the exception of the request for ill-gotten gains, the government has not met its burden of proving the losses associated with Jane Doe's medical, therapeutic, and psychiatric treatment. The Court does not doubt that sex trafficking can cause significant trauma to the victim, particularly in the case of a minor victim. The Court further recognizes that the causations standards are not "intended to disqualify every trafficking victim who, at some point in their life, suffered from trauma unrelated to the offense conduct." *United States v. Coulter*, No. CR-18-156-D, 2024 WL 388132, at *3 (W.D. Okla. Feb. 1, 2024), aff'd, 133 F.4th 1083 (10th Cir. 2025). But neither of these points allow the Court to dispense with the necessity that the government prove that Defendants' conduct, however reprehensible, was the cause of the victim's losses. *See*

*Anthony I*, 942 F.3d at 969 ("On remand, the government must prove that [the defendant's] acts justify the requested restitution award."); *Anthony II*, 22 F.4th at 951–52 (explaining that the government's witness "needed to show that, had [the victim] never encountered [the defendant], she would not have needed the requested therapy and medications").

In this case, the evidence connecting Jane Doe's past and future treatment needs to Defendants' conduct was too speculative, particularly given the specific conduct involved in the offense and Jane Doe's prior history. As previously noted, there is no expert testimony or testimony from a treatment provider identifying Jane Doe's diagnosis or treatment needs, connecting that treatment to trauma inflicted by Defendants' sex trafficking, or identifying an appropriate duration of treatment. While expert testimony of this sort may not always be required, the only evidence available in this case did not meet the government's evidentiary burden.

The government relies on a June 24, 2025 letter from Counseling and Recovery Services stating that Jane Doe was evaluated using a comprehensive assessment, her treatment goal is "to heal her trauma," she has attended 26 sessions, and they recommend that she continue and complete the program. There are no specifics regarding the results of the assessment or the trauma that is being treated. Further, a subsequent email from the same provider states that she "cannot give a total for future services" and that Jane Doe's "need for future services" will be evaluated when her treatment plan expires on September 2, 2025. The letter from Jane Doe's GAL seeking restitution for 8-10 years of future treatment is even more speculative as it appears to be based on another district court's

5

decision[1] to award restitution for ten years' worth of psychological treatment, as opposed to the actual treatment needs of Jane Doe in this case. To the extent the government tries to connect the dots by relying on the testimony of Jane Doe's mother, the Court was not persuaded that it was sufficient to prove, by a preponderance, that Defendants' conduct was the but-for cause of Jane Doe's past or future treatment needs.

Again, the Court does not intend to suggest that minor victims of sex trafficking offenses do not experience harm or that therapeutic treatment is not warranted in such cases. Nor does the Court seek to impose an overly cumbersome evidentiary burden on victims seeking restitution. But the Court must be able to make "a reasonable determination of the appropriate restitution rooted in a calculation of actual loss." *Ferdman,* 779 F.3d at 1133. The evidence presented in this case is too speculative and does not permit the Court to make such a reasonable determination as to the request for past and future psychological, medical, or therapeutic treatment.

However, the government has shown, by a preponderance of the evidence, that Defendant Jackson withheld $1,230.00 in proceeds generated by Jane Doe's sex trafficking victimization. The evidence indicates that this amount was earned due to the commercial sex acts performed by Jane Doe and Defendant Holland. Defendant Jackson concedes this point. Defendant Holland argues that an award of ill-gotten gains against her is not

---

[1] Notably, that case involved expert testimony that directly connected the victim's treatment to the defendant's conduct. *United States v. Coulter*, No. CR-18-156-D, 2024 WL 388132, at *2 (W.D. Okla. Feb. 1, 2024), aff'd, 133 F.4th 1083 (10th Cir. 2025).

adequately supported because the evidence shows that Defendant Jackson kept the money generated from the commercial sex acts.

In determining the restitution award, "[i]f the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." 18 U.S.C. § 3664(h). Defendant Holland played a critical role in sex trafficking Jane Doe and contributed to this loss. The Court therefore finds that Defendants should be held jointly and severally liable for payment of the full amount of restitution.

Accordingly, the Court orders restitution in the amount of $1,230.00. An amended judgment will be entered.

IT IS SO ORDERED this 6th day of February, 2026.

*David L. Russell*
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE